PER CURIAM.
On March 25, 1969, the appellant entered into a contract with appellees B & B Auto Parks, Inc., and Charles E. Binkow for purchase of their interests as lessees under a long term lease on several parcels of real estate. Two such leases, covering portions of the property, were in existence. Negotiations for a 99-year lease on the portion of the property not held under long term lease were in progress between the sellers and the owner thereof. Sellers agreed to complete the negotiations and obtain such lease within thirty days, by April 25, 1969. The closing date, specified in the contract to be ninety days after delivery of abstracts showing proper title, • was established to be October 14, 1969. The purchase price was $600,000. A down payment of $50,000 was made by the purchase-er. It was deposited with the appellee Oscar E. Dooly Associates, Inc., the broker in the transaction, to be held by it in escrow.
The 99-year lease mentioned was not concluded within thirty days, but was ob *797 tained by the sellers on or about August 1, 1969. No objection to that delay was made until September 12, when the purchaser notified sellers that because of the delay in obtaining such lease the purchaser considered the contract no longer in effect. On the day for closing, in October, the parties or their representatives met. The sellers were prepared to close. The purchaser refused to close.
This action was by the purchaser to recover the down payment. It was brought against the sellers and against the broker having possession of the down payment. The broker counterclaimed against the plaintiff and cross-claimed against the sellers, claiming $50,000 commission. Following trial of the cause before the court, judgment was entered denying the plaintiff’s claim for return of the down payment, holding the broker was entitled to $25,000 commission, and granting judgment in favor of the seller Binkow against the broker for $25,000 (with the broker thus retaining $25,000 of the $50,000 down payment as commission). The judgment granted interest on those sums against the purchaser from October 14, 1969, the closing date, less such interest as the broker had obtained on the down payment deposit during the period it was in escrow.
The purchaser appealed from the judgment denying return of the down payment. The broker cross-assigned as error the holding of the trial court that the broker was entitled to $25,000 commission rather than $50,000 as claimed.
In denying recovery by the purchaser, the trial court held that the purchaser had defaulted by refusing to close the transaction, and that the delay of the sellers in obtaining the 99-year lease on a portion of the property did not operate to excuse nonperformance by the purchaser. Among the reasons assigned in the judgment for the last mentioned ruling were the absence of timely objection by the purchaser to failure of the sellers to obtain the above mentioned 99-year lease by April 25, 1969; the fact, shown in evidence, that several weeks after April 25 an attorney for the purchaser had made certain suggestions to the sellers as to a provision or provisions to be included in such lease; that the purchaser, without objection between April 25 and August 1, permitted the sellers to proceed with the negotiations and obtain the 99-year lease, when the sellers had no purpose or need therefor other than to comply with the sale contract. See 7 Fla.Jur., Contracts § 144; Ibid § 180 and cases cited there. Additionally, it does not appear that at the time for closing the purchaser relied on delay in obtaining the lease as a reason for refusing to perform. On the contrary, there was evidence by testimony of an attorney for the purchaser that the latter’s failure to close on October 14, 1969, was because of a change in the money market creating an “extremely tight money situation and high interest rates.” In view of the foregoing showing we are impelled to reject, as without merit, the contention of the appellant that the court erred in holding that the purchaser’s nonperformance was not excusable.
We affirm also the trial court’s ruling relating to the broker’s commission. Appended to the contract was a written agreement relating to commission, signed by the seller Binkow, as follows: “I agree to pay to the above-signed broker as commission for finding the above-signed purchaser for the above-described property, the sum of Fifty Thousand ($50,000.00) Dollars or one half of all amounts paid under said contract if the said amounts are retained pursuant to the terms thereof, whichever is the lesser sum.” [Italics supplied.]
A provision of the sale contract authorizing retention by seller of one half of the down payment or deposit, in event of default by the purchaser, was as follows:
“ * * * It is further agreed that in case of default by the purchaser, the sellers may at their option take legal action to enforce this contract, in which *798 event the purchaser shall pay reasonable attorney fees and court costs; or else the sellers may at their option retain one-half of the deposit herein paid as consideration for the release of the purchaser by the sellers from any and all further obligations under this contract to the sellers, which release shall be implied from such act of retention by the sellers.”
According to the provision of the contract just quoted, upon the default of the purchaser, where the sellers did not elect to take legal action to enforce the contract, it would appear they were entitled to retain one half of the $50,000 down payment ($25,000) which is the amount they ultimately received under the judgment. Therefore, rather than to have received less than it was entitled to as commission, it could have been argued (but does not appear to have been so argued or contended in the trial court, or here) that the $25,000 received by the broker was more rather than less than it was entitled to receive under the terms of its contract for commission, when read in connection with the above quoted provision of the contract as to the amount the sellers were authorized to retain upon default by the purchaser. However, by virtue of another provision of the sale contract the purchaser became liable for payment of such commission as the broker should become entitled to receive, in event of default by the purchaser, which occurred. In that connection the contract provided: “It is further agreed that in case this transaction is not completed due to any default or failure on the part of the purchaser, the said purchaser shall in that event become liable to the broker for brokerage commission as hereinafter provided.” Therefore, the $25,000 which the trial court found the broker was entitled to receive, was as between the purchaser and the sellers, pursuant to their contract, the obligation of the purchaser. On the theories advanced above, the judgment could and perhaps should have provided for the seller Binkow to receive $25,000 representing one half of the escrowed down payment. The purchaser then would have been entitled to a return of the remaining $25,000 of the down payment. However, the broker as counterclaimant would have been entitled to judgment against the purchaser for the payment of its commission as fixed by the trial court at $25,000. While the judgment did not proceed on those theories, predicated on the terms of the contract as they related to retention of deposit and payment of commission upon default by the purchaser, the results obtained by the judgment were exactly that which we have outlined above, wherein the seller Binkow obtained, or retained $25,000 and the remaining $25,000 went as brokerage commission.
No reversible error having been made to appear, the judgment is affirmed.